Ms. Stacey Witherell Employee Services Manager Human Resources Department City of Little Rock 500 W. Markham, Suite 130W Little Rock, AR 72201-1428
Dear Ms. Witherell:
I am writing in response to your request for my opinion, pursuant to A.C.A. § 25-19-105(c)(3)(B), regarding the possible release of certain records under the Arkansas Freedom of Information Act ("FOIA"), A.C.A. §§25-19-101 through -109 (Repl. 2002 Supp. 2003 Acts 2005, Nos. 259, 1994 and 2003). My statutory duty under A.C.A. § 25-19-105(c)(3)(B) is to determine whether the decision of the custodian of records as to the release of personnel or evaluation records is consistent with the FOIA.
As custodian of records, you report that you have been asked to produce various records relating to the operations of the Little Rock Fire Department. Specifically, an individual has submitted the following request:
 This is a formal request for all the Little Rock Fire Department's disciplinary actions beginning January of 1995 thru [sic] July of 2005. Please include the following information in the actions [sic] race, gender, the infraction, and the action taken including all comments.
I must note initially that you have apparently not yet determined which documents, if any, you intend to release, thus rendering it impossible for me to perform my statutory function of reviewing your provisional decision. Rather, you have only generally remarked that, in order to support disclosing these documents, there must be a "compelling public interest" in their release. You suggest that "only those disciplinary actions involving the use/possession of drugs, arrests and/or convictions, [and] violation of rules involving safety, fall within the `compelling public interest' area and should be released; all other actions do not meet this requirement and therefore, should not be released." Under the circumstances, I can do no more than set forth the standard I believe you should apply in reviewing the documents. I am authorized only to review your provisional determination regarding what documents are subject to release, not to advise you in your initial selection of disclosable documents. The city attorney should render such initial advice.
Having reviewed the documents, which comprise primarily notices of suspension or termination setting forth the reasons for taking the disciplinary action, I believe they are all "employee evaluations or job performance records" under the FOIA. A.C.A. § 25-19-105(c)(1).[1] See
Ark. Op. Att'y Gen. No. 2003-257 ("A notice of suspension that states the reason for the suspension . . . constitutes an `employee evaluation/job performance record.' See Ops. Att'y Gen. Nos. 2001-141; 2001-276; 2000-267; 2000-203; 97-400.")
The FOIA does not define the phrase "employee evaluation or job performance records," nor have the courts found occasion to do so. The Attorney General has consistently taken the general position that documents such as written reprimands and letters of caution, documents supporting a recommendation for suspension or dismissal, and letters related to promotions and demotions are "employee evaluations or job performance records." See, e.g., Ops. Att'y Gen. Nos. 2005-162; 2005-094; 2001-203; 99-147; 93-105, 93-055, 92-231, 92-191, 91-324, and 91-303. This office has also taken the position that records that were generated as part of an investigation of allegations of the misconduct of an employee and that detail incidents that gave rise to an allegation of misconduct should be deemed the "employee evaluation/job performance records" of that employee. See Ops. Att'y Gen. Nos. 2005-162; 2005-112; 2001-063; 2000-231; 2000-203; 2000-130; 1999-361; and 1999-359.
The FOIA dictates that employee evaluations be released only if the following three conditions have been met:
 (1) There has been a final administrative resolution of any suspension or termination proceeding;
 (2) The records in question formed a basis for the decision made in that proceeding to suspend or terminate the employee; and
 (3) There is a compelling public interest in the disclosure of the records in question.
A.C.A. § 25-19-105(c)(1).[2]
You have provided me documents relating to a number of suspensions or terminations that have occurred during the time period at issue. You report that there has been a final administrative resolution of all disciplinary actions reflected in the documents you have produced, thus meeting the first criterion listed above. You focus in your analysis only on the third criterion, suggesting that you have concluded that the second criterion — namely, that the documents "formed a basis" for the suspension or termination — has been met in all instances. Based upon my review of the documents, I agree with this conclusion. This office has concluded on various occasions that any document up to and including a notice of suspension or termination that details the reasons for the disciplinary action should be deemed to have "formed a basis" for that action. See, e.g., Ark. Ops. Att'y Gen. Nos. 2005-112, 2005-030, 2003-381, 2002-158, 2002-144, 97-415, and 95-171. The ensuing analysis will consequently focus on the "compelling public interest" criterion.
The FOIA at no point defines the phrase "compelling public interest." However, two leading commentators on the FOIA have provided some guidelines for making the factual determination whether such an interest exists. See J. Watkins R. Peltz, The Arkansas Freedom of InformationAct (m m Press, 4th ed. 2004). The authors state, for instance: "The nature of the problem that led to the suspension or termination will undoubtedly bear on the `compelling public interest' question. . . ."Id. at 205. They further observe: "The public's interest in disclosure is most likely to be compelling when the records reflect a breach of trust or illegal conduct by public employees. . . . However, the mere fact that an employee has been suspended or terminated does not mean that the records should be made public; if that were the case, the `compelling public interest' phrase would be a redundancy. . . ." Id. at 204, 205. Elaborating on this point, they remark: "A general interest in the performance of public employees should not be considered compelling, for that concern is, at least theoretically, always present." Id. at 207. They additionally note that the status of the employee, or "his rank within the bureaucratic hierarchy," may also be relevant in determining whether a "compelling public interest" exists. Id. at 206 (remarking that "[a]s a practical matter, such an interest is more likely to be present when a high-level employee is involved than when the [records] of `rank-and-file' workers are at issue."). However, Professors Watkins and Peltz note that "[i]n some cases, . . . rank is unrelated to importance" — a proposition they illustrate by suggesting that "[t]he public has a great interest in the performance of police officers and other law enforcement officials, and in this case the `cop on the beat' is just as important as the chief of police." Id. at 207.
The question of whether there is a compelling public interest in particular records is clearly one of fact that must be determined in the first instance by you, as the custodian of the records, considering all of the relevant information on a case-by-case basis. In my opinion, it is too formulaic to suggest that "only those disciplinary actions involving the use/possession of drugs, arrests and/or convictions, [and] violation of rules involving safety, fall within the `compelling public interest' area and should be released." To be sure, this office has repeatedly opined that, in particular instances, a compelling public interest exists in the disclosure of documents containing information falling within these categories. See, e.g., Ark. Ops. Att'y Gen. Nos. 2001-144
(use/possession of drugs); 2003-257, 97-190 and 97-177 (arrests and/or convictions); 2003-072, 2001-343, 98-210, 98-075, 97-400 and 92-319 (violation of rules involving safety). However, neither I nor any of my predecessors has opined that only these categories of information could give rise to a compelling public interest in disclosure. In my opinion, regardless of what category of information a document contains, in order to determine whether a compelling public interest exists in its disclosure, the custodian must conduct a detailed review of the document considering the factors discussed in my previous paragraph.
With respect to the factor of rank within the organization, you note that "[a]ll the actions involve personnel at the rank of Battalion Chief or below — at the time the action took place." You further note that "[t]he structure of the Fire Department includes Fire Chief, Assistant Fire Chief, Battalion Chief, Captain, Apparatus Engineer and Firefighter." It is not entirely clear whether you have offered this information in support of a suggestion that the employees in question were of lower rank and that there is consequently a less compelling public interest in the disclosure of documents pertaining to conduct that resulted in disciplinary action against them. However, given the hierarchy you have recited, I will note that the positions of Battalion Chief and Captain can hardly be described as "lower-rank." Moreover, in my opinion, firefighters constitute a category of public servant very similar to policemen in terms of their direct importance to the general public. In Ark. Op. Att'y Gen. No. 2005-162, citing J. Watkins R. Peltz, supra at 207, I opined that a police officer's rank might in certain instances be unrelated to the public interest in the disclosure of documents relating to his conduct. I believe this same conclusion applies to firefighters. In determining what documents to disclose, irrespective of an employee's rank within the Fire Department, I believe you should consider in each case the potential public impact of the misconduct at issue. Compare
Ark. Op. Att'y Gen. No. 2003-072 ("Although it is true that a public employee's rank can impact the issue of whether there is a compelling public interest in that employee's records . . ., in my opinion that factor is outweighed in this case by the nature of the employees' alleged conduct at a time of public concern and debate about the operation of their department.").
Virtually all of the documents you have supplied relate directly or indirectly to some violation of departmental rules. In Ark. Op. Att'y Gen. No. 97-400, one of my predecessors observed:
 With regard to the existence of a "compelling public interest in disclosure". . ., it is my opinion that the nature of the problem that led to the suspension compels disclosure in this instance where the activities detailed in the records violated administrative rules and policies aimed at conduct which could undermine the public trust and/or compromise public safety. See generally J. Watkins, The Arkansas Freedom of Information Act 135 (2nd ed. 1994) (discussing the "compelling public interest" question).
In my opinion, the operative language in this excerpt is "administrative rules and policies aimed at conduct which could undermine the public trust and/or compromise public safety." Only by considering the particular rule that a firefighter violated in each particular instance can you determine whether a compelling public interest exists in disclosing the documents relating to that violation. In some cases, this inquiry should be quite straightforward, as in instances of criminal or official conduct that manifestly threatens public safety. In other cases, the inquiry might be more nuanced, as in instances of misconduct that does not directly implicate the public welfare. In the latter category of cases, the factual context in which a violation occurs might prove of paramount importance in determining whether a compelling public interest in disclosure exists. See, e.g., Ark. Op. Att'y Gen. No.2003-072 (opining that when there had been considerable public debate about the performance of a department of code inspection, a compelling public interest existed in the disclosure of documents revealing that inspectors engaged in a practice of taking breaks longer than authorized by department policy).
In summary, I believe you should review all of the documents that you have determined fall within the scope of the request under the standard discussed above. This review will of necessity be factual in nature and may entail consulting with city officials and the city attorney.
Finally, you have asked me for "guidance on the payment for `overnight' mail as required to notify the subject of the records and if the person making the request can be charged this expense." Subsection25-19-105(c)(3)(B)(i) (Supp. 2003) provides in pertinent part:
 If the subject of the records cannot be contacted in person or by telephone within the twenty-four-hour period, the custodian shall send written notice via overnight mail to the subject of the records at his or her last known address.
The FOIA contains no provision authorizing the custodian to charge the requestor for the nominal expense of this notice.
The authorization for reimbursing expenses under the FOIA is set forth at A.C.A. § 25-19-105(d)(3) (Supp. 2003), which provides:
 (A)(i) Except as provided in § 25-19-109[3] or by law, any fee for copies shall not exceed the actual costs of reproduction, including the costs of the medium of reproduction, supplies, equipment, and maintenance, but not including existing agency personnel time associated with searching for, retrieving, reviewing, or copying the records.
 (ii) The custodian may also charge the actual costs of mailing or transmitting the record by facsimile or other electronic means.
 (iii) If the estimated fee exceeds twenty-five dollars ($25.00), the custodian may require the requester to pay that fee in advance.
 (iv) Copies may be furnished without charge or at a reduced charge if the custodian determines that the records have been requested primarily for noncommercial purposes and that waiver or reduction of the fee is in the public interest.
 (B) The custodian shall provide an itemized breakdown of charges under subdivision (d)(3)(A) of this section.
This statute authorizes charging the requestor for a copy of the record, including the costs of mailing the record, but does not authorize reimbursement for the notice referenced in your request.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:JHD/cyh
[1] I gather from the documents you have provided me that the disciplinary records that are the subject of the FOIA request do not contain information regarding the race of the disciplined employees. In my opinion, the requestor could obtain this information by submitting a request for "personnel records" reflecting this information regarding any particular employee or former employee of the Fire Department.
[2] This standard differs considerably from the standard applicable to "personnel records," which are exempt from disclosure under the FOIA if their release would constitute a "clearly unwarranted invasion of personal privacy." A.C.A § 25-19-105(b)(12).
[3] The referenced section authorizes charging a requestor the actual expense of summarizing, compiling or tailoring electronic data in a particular manner.